656 A.2d 463

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Deering CARTER a/k/a Deering Ernest Carter a/k/a Jonathan Jones Deering Ernest Carter a/k/a Deering E. Carter, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 21, 1994.

Decided March 23, 1995.

Lester G. Nauhaus, Public Defender, Shelley Stark, Chief–Appellate Div., James G. Stock, Appellate Counsel, Andrea I. Konow, for appellant.

Robert E. Colville, Dist. Atty., Kemal A. Mericli, Scott A. Bradley, Asst. Dist. Attys., for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

CASTILLE, Justice.

The sole issue before this Court is whether appellant's trial counsel was ineffective for failing to correct an allegedly "defective nolo contendere plea colloquy or move for withdrawal of the pleas on these grounds where the defendant was never advised of the maximum aggregate sentence which could be imposed." For the reasons expressed below, we affirm the Superior Court's affirmance of the judgments of sentence.

On October 29, 1991, the Commonwealth presented the following evidence to which appellant entered a nolo contendere plea to four counts of burglary,[1] two counts of theft by unlawful taking,[2] and to two counts of receiving stolen property.[3] On December 20, 1989, the apartment of James and Gail Fry was broken into while the residents were away. The perpetrator entered the apartment by kicking in the basement door and breaking open the door leading from the basement to inside the apartment. Approximately $4,000.00 worth of items were taken from the Fry's apartment including assorted Christmas gifts and Ms. Fry's engagement and wedding rings. Appellant's fingerprints matched the prints lifted from the scene. The Frys testified that they did not know appellant and never consented to his entry into their home.

On August 21, 1990, approximately eight months after the first break-in, the Fry's apartment was broken into a second time. The perpetrator entered the apartment by breaking a window and forcibly entering a locked door. This time, approximately $3,000 worth of items were taken from the apartment. Fingerprints were again lifted, this time from the window, and again matched those of appellant. Ms. Fry testified that the windows were cleaned every month and that,

1. 18 Pa.C.S. § 3502.

2. 18 Pa.C.S. § 3921.

3. 18 Pa.C.S. § 3925.

therefore, the fingerprints could not have existed from the break-in on December 20, 1989.

Approximately three months after the second burglary of the Fry's residence, appellant was caught breaking into the residence of a third victim, Mrs. Wall. While Mrs. Wall was home, her alarm sounded in her basement. After briefly investigating the alarm, she returned upstairs and saw appellant, a stranger to her, walking down her outside steps. Mrs. Wall called the police and reported appellant's description and the direction in which he was walking. Approximately fifteen to twenty minutes later, police apprehended appellant. Mrs. Wall positively identified him as the intruder in her home. Appellant had not stolen anything owned by Mrs. Wall; however, he was found in possession of a knapsack that had been reported as stolen from yet another residence approximately four blocks away.

Keith Morris, appellant's fourth burglary victim, was away from his residence from July 29, 1991, through August 3, 1991. When he returned, he discovered that his residence had been broken into and that items valued at approximately $1,175.00 had been stolen. Yet another fingerprint lifted from the point of entry matched appellant's. Appellant was a stranger to Mr. Morris and had not been given permission at any time to enter Mr. Morris' residence.

The trial court conducted a colloquy on the record during which the trial court advised appellant of each of the maximum sentences that could be imposed on each offense as well as the mitigated, standard and aggravated sentencing ranges. The trial court further advised appellant that he could file a motion to withdraw his plea within ten days. Appellant additionally completed an extensive written nolo contendere plea colloquy. Finding that appellant understood the nature of the charges, the maximum sentences to which he was subject, and his post-plea rights, the trial court accepted appellant's nolo contendere plea and deferred sentencing pending a pre-sentence report. Appellant's trial counsel did not file a motion to withdraw his plea within ten days after the plea was entered.

On February 13, 1992, approximately three months later, the trial court sentenced appellant to two consecutive terms of three (3) to six (6) years imprisonment on the first two counts of burglary, and to two concurrent terms of three (3) to six (6) years imprisonment on the remaining two counts of burglary, for an aggregate sentence of six to twelve years imprisonment.[4] The day after he was sentenced, appellant filed a motion to withdraw his nolo contendere plea alleging that his plea was not knowingly, voluntarily or intelligently entered into because "he expected his sentence to be significantly less due to mitigating circumstances." Appellant also filed a motion for reconsideration of his sentence urging the trial court to stay his imprisonment since he believed that incarceration would hamper any potential drug rehabilitation attempts by him. The trial court denied both motions.

On March 9, 1992, appellant, represented by another attorney from the public defender's office, filed a Notice of Appeal with the Superior Court alleging *inter alia* (1) that appellant's pleas of nolo contendere were not "knowing" and "voluntary" since he was not informed that his sentences could be consecutive, and (2) that trial counsel was ineffective for failing to object to the allegedly defective nolo contendere plea or to preserve the issue for appeal.[5] This appeal is from the order of the Superior Court affirming appellant's judgments of sentence.

■ With respect to appellant's claim of ineffectiveness, it is important to note that trial counsel is presumed to have been effective. *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981). In order to defeat this presumption and

---

4. The trial court merged the theft and receiving stolen property convictions into the burglary convictions for the purposes of sentencing.

5. Appellant's trial counsel and appellate counsel are both from the public defender's office. As a general rule, a public defender should not argue the ineffectiveness of another member of the same public defender's office and is highly disfavored. However, it is not necessary to remand the matter for the appointment of new counsel where, as here, a conclusive determination as to counsel's ineffectiveness can be made from the record. *Commonwealth v. McBee*, 513 Pa. 255, 261, 520 A.2d 10, 13 (1986).

prove his claim, appellant must demonstrate that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct chosen by trial counsel did not have some reasonable basis designed to effectuate appellant's interests; and (3) counsel's alleged ineffectiveness prejudiced appellant. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

With respect to the merit of appellant's underlying claim, we note that pursuant to Pa.R.Crim.P. 319(a), a trial court must make a certain inquiry of a defendant to ensure that the defendant's plea is voluntarily and understandingly tendered. At a minimum, the judge is required to ask the defendant:

(1) Does the defendant understand the nature of the charges to which he is pleading guilty?

(2) Is a factual basis for the plea?

(3) Does the defendant understand that he has the right to a trial by jury?

(4) Does the defendant understand that he is presumed innocent until he is found guilty;

(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged;

(6) Is the defendant aware the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

Comment to Pa.R.Crim.P. 319; *Commonwealth v. Willis,* 471 Pa. 50, 369 A.2d 1189 (1977). This Court held in *Commonwealth v. Kulp,* 476 Pa. 358, 382 A.2d 1209 (1978), that: "the decision to plead guilty to a charge could not be accepted as being knowingly and intelligently entered into without an assurance that the accused fully comprehended the maximum punishment that might be imposed for his conduct." *Supra,* at 358, 382 A.2d at 1211. The purpose of the rule is to insure that the defendant fully understands the nature of the crimes to which he or she is pleading guilty and the rights that are being waived by the plea. *See Commonwealth v. Sutton,* 474 Pa. 582, 379 A.2d 107 (1977) (the purpose of an on the record colloquy prior to acceptance of a guilty plea is to assure that

the defendant enters his plea knowingly, voluntarily, and intelligently).

In this instant case, appellant completed (with the assistance of trial counsel) an extensive written nolo contendere plea in which he acknowledged that he understood the "permissible range of sentences and/or fines that could be imposed for the offenses charged." He further testified during the nolo contendere plea colloquy that he had discussed with counsel his written nolo contendere plea, that he read and understood each question, and that he was satisfied with trial counsel's representation. (N.T., 10/29/91, p. 11). The record also reflects that during the nolo contendere plea colloquy that the trial court expressly informed appellant of the maximum sentences he could receive on each separate crime, including a sentence of 20 years maximum on a single count of burglary which is graded as a felony of the first degree. Appellant responded by stating that he understood the charges against him and the maximum sentences and fines for each crime, and that he was pleading guilty because the weight of the evidence was against him. (Id. at pp. 4–6, 10–11). These circumstances make it clear that appellant was fully aware of the possible sentences he risked on each offense to which he pleaded nolo contendere.

Appellant admits that he was aware of the maximum sentence of each crime to which he could be subjected, however, he argues that such information was insufficient for his plea to be valid. Rather, he contends that for the colloquy to be valid, he must have been informed that each of the separate sentences could be imposed consecutively. In support of his position, appellant cites to *Commonwealth v. Persinger*, 532 Pa. 317, 615 A.2d 1305 (1992). However, his reliance thereon is misplaced.

In *Persinger*, the defendant pleaded guilty to nine counts of bad checks,[6] and one count of theft by deception.[7] He was informed during his colloquy that the maximum sentence he

6. 18 Pa.C.S. § 4105.
7. 18 Pa.C.S. § 3922.

risked for each bad check offense was one to two years, and two and one half to five years for his theft count. 18 Pa.C.S. § 106. Thus, while the defendant had been informed of the maximum sentence for each crime, he had not been informed of the total maximum sentence he risked if sentenced for all of the crimes together or consecutively. After accepting the defendant's guilty plea, the trial court sentenced him to the maximum permissible amount on each count with the sentences to run consecutively, for a total term of imprisonment of seven and one-half to fifteen years. Thus, the defendant's total sentence resulted in being far greater than the maximum he could obtain on the highest graded offense.

The issue before this Court was whether under such circumstances, the defendant demonstrated "prejudice on the order of manifest injustice" so as to justify a withdrawal of his guilty plea post-sentencing.[8] Because defendant in *Persinger* had not been advised of the maximum total he could be sentenced to consecutively and, indeed, had been sentenced to the maximum total, this Court held that the defendant had demonstrated "prejudice on the order of manifest injustice," and that, accordingly, he was entitled to withdraw his guilty plea. This Court further held that trial counsel's failure to file a motion to withdraw the plea amounted to ineffective assistance of counsel.

Here, unlike *Persinger*, appellant was not sentenced to a term of imprisonment that exceeded his expectations of imprisonment so as to make his plea involuntary or unknowing. To the contrary, appellant was advised that on each count of burglary he risked a term of imprisonment of up to twenty years.[9] However, appellant's *total* prison sentence failed to meet even the maximum permissible sentence for a *single* count of burglary.

---

**8.** "When considering a petition to withdraw a guilty plea submitted to a trial court after sentencing ... it is well established that 'a showing of prejudice on the order of manifest injustice' is required before withdrawal is properly justified." *Commonwealth v. Shaffer*, 498 Pa. 342, 446 A.2d 591 (1982) (citations omitted).

**9.** 18 Pa.C.S. §§ 3502, 1103(1) (grading burglary as a felony in the first degree with a maximum sentence of 10 to 20 years).

Again, one of the key inquiries to be made is whether appellant suffered any prejudice from his trial counsel's alleged inaction. Unquestionably, under these circumstances where the aggregate sentence falls within the minimum and maximum sentence that can be imposed on a single count of the crimes charged, appellant was not prejudiced for not being informed of the maximum total sentence he risked by pleading *nolo contendere.* He was advised that he risked being sentenced up to twenty years on each of his burglary counts. Instead, he received only a *total* of six to twelve years incarceration. Accordingly, his trial counsel cannot be deemed ineffective for failing to object to the plea colloquy.

Accordingly, we affirm the Superior Court's affirmation of the trial court's judgment of sentence.

MONTEMURO, J., is sitting by designation.